UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

COTT CORPORATION,

               Plaintiff,

v.                                                  **DECISION AND ORDER**
                                                         12-CV-1004S

STANLEY A. STAR, as Sellers' representative
for the sellers of Cliffstar Corporation and its
subsidiaries under an asset purchase agreement
dated as of July 7, 2010,
                         Defendant.

## I. INTRODUCTION

In August of 2010 Cott Corporation and Cliffstar Corporation, including various Cliffstar Corporation subsidiaries, executed a purchase agreement authorizing the sale of Cliffstar's assets to Cott. Cott now alleges that Cliffstar breached that purchase agreement, and, invoking this Court's diversity jurisdiction, it brings this breach-of-contract action against Defendant Stanley Star, as Cliffstar's representative.

Star moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject-matter jurisdiction over the suit. For the following reasons, that motion is denied.

## II. BACKGROUND

**A.    Facts**

On August 17, 2010 Cott purchased the assets of Cliffstar Companies. The composition of "Cliffstar Companies" requires clarification at the outset. It appears that, as used in the purchase agreement, "Cliffstar Companies" consists of the Cliffstar Corporation

and four subsidiaries – Star Real Property LLC, ShanStar Biotech, Inc., Star World Trading Company, and Harvest Classic LLC.[1] Cott purchased all five of these companies for a base price of $500,000. (Am. Compl., at 1; Docket No. 18). The parties arrived at this price by calculating "Cliffstar Companies' earnings[,] or net income[,] before interest, taxes, depreciation, and amortization ('EBITDA') times a multiple." (Id.)

The amended complaint, however, uses the umbrella title "Cliffstar or Cliffstar Companies" differently than the purchase agreement; in the amended complaint, Cott refers to only three of those five companies as the "Cliffstar Companies," intentionally omitting Harvest Classic LLC and Star Real Property LLC. The import of this will be discussed further below. But for now, it suffices to note that Cott alleges that the purchase agreement contained "several representations and warranties by Cliffstar about Cliffstar's financial condition." (Id., at 2.) According to Cott, after closing on the deal, it realized that Cliffstar had breached several of these representations and warranties. (Id., at 3.) It now brings this action to recover damages against Cliffstar (as defined in the amended

---

[1]The agreement provides:

> THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of July 7, 2010, is by and among Cott Corporation, a corporation organized under the laws of Canada ("Purchaser"), Caroline LLC, a Delaware limited liability company and an indirect or direct, wholly-owned subsidiary of Purchaser ("Purchaser Sub"), Cliffstar Corporation, a Delaware corporation (the "Company"), Star Real Property LLC, a Delaware limited liability company ("Star Real Property"), ShanStar Biotech, Inc., a Delaware corporation ("ShanStar"), Star World Trading Company, a Delaware corporation ("Star Trading"), Harvest Classic LLC, a Delaware limited liability company (**"Harvest" and together with the Company, Star Real Property, ShanStar, Star World Trading Company and Star Trading, collectively, the "Cliffstar Companies"**), and Stanley A. Star ("Star") solely in his capacity as Sellers' Representative.

This Court notes that the drafters of the purchase agreement seem to have mistakenly referred to Star World Trading Company by both its full and shortened name in the bolded parenthetical.

complaint) in connection with those alleged breaches.

**B.     Procedural History**

Cott filed a complaint in this Court on October 19, 2012. (Docket No. 1.) Then, on December 7, 2012, Star moved to dismiss the complaint for lack of subject-matter jurisdiction. Cott responded with an amended complaint and a memorandum, in which it argued that the new complaint rendered moot the motion to dismiss. Star, however, disagreed, and filed a reply arguing as much.  Also, in an "abundance of caution," Star filed a motion to dismiss the amended complaint, but requested that his previous briefing be considered in support of the new motion.  (Docket No. 21.) This Court then denied the first motion to dismiss as moot, permitted Cott to file a response to the new motion, and allowed Star to file a reply to Cott's response. (Docket No. 24.)

Briefing concluded on February 4, 2013, at which time this Court took the matter under consideration.

## III. DISCUSSION

Star mounts a three-pronged attack on this Court's diversity jurisdiction.

First, Star argues that he – not the Cliffstar companies under any definition – is the real party to the controversy, and that therefore his citizenship should control for the purposes of determining diversity jurisdiction. If it did, because there is no dispute that Cott and Star are both citizens of Florida, the requisite complete diversity would not exist and dismissal would be mandatory. See 28 U.S.C. § 1332 (a)(1); see also, e.g., Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 388, 118 S. Ct. 2047, 141 L. Ed. 2d 364 (1998).

Second, he contends that the citizenship of the corporate entities that Cott has not sued must be considered in determining whether complete diversity exists. Because those

3

entities are not identified, Star argues, Cott has not met its burden demonstrating that diversity jurisdiction exists.

And third, he argues that the citizenship of Cliffstar Corporation, an entity that *is* named in the complaint, is actually Florida, not New York – thus destroying diversity jurisdiction.

**A.     Star as representative of Cliffstar[2]**

Twenty-eight U.S.C. § 1332(a)(1) authorizes federal courts to exercise subject-matter jurisdiction over "citizens of different states." See also U.S. Const. Art. III, § II. But the citizenship of the parties must be completely diverse. In other words, this Court can exercise jurisdiction "only if there is no plaintiff and no defendant who are citizens of the same State." Schacht, 524 U.S. at 388; see also Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806). "[I]t is well established that 'the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.'" Herrick Co., Inc. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001) (citing Advani Enter., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir.1998)) (modifications omitted). If this burden is not met and "subject matter jurisdiction is lacking, the action must be dismissed." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000).

"The test for determining the existence of diversity jurisdiction is generally 'the citizenship of real parties to the controversy.'" E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F. 3d 925, 930 (2d Cir. 1998) (citing Navarro Savings Ass'n v. Lee, 446 U.S.

---

[2]For this section of the Decision, this Court will use the term "Cliffstar" as defined in the amended complaint. That is, to represent only three of the five companies.

458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980)). That is, "citizens," for purposes of a federal court's diversity jurisdiction, "must be real and substantial parties to the controversy." Navarro, 446 U.S. at 460.[3]

To establish whether a plaintiff is a "real and substantial party to the controversy,' "a crucial distinction must be made between a plaintiff who sues solely in his capacity as an agent, on the one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 194 (2d Cir. 2003) (articulating this principle in determining whether a plaintiff was a "real and substantial party"). The Second Circuit has noted that "where multiple parties all have a financial interest in a lawsuit, a strategic choice of parties in order to maintain diversity is not considered to be collusive so long as the party chosen to bring the suit is in fact the master of the litigation." Transcon. Oil Corp. v. Trenton Products Co., 560 F.2d 94, 103 (2d Cir. 1977).

****

Star relies on the distinction pointed out by the Oscar Gruss court; he contends that while he may be a representative of Cliffstar, he also has a personal stake in the outcome of the litigation, and ought to be considered the real and substantial party.

To support this position, Star points to the following facts as alleged in the amended complaint:

---

[3] This standard is slightly different than that under Federal Rule of Civil Procedure 17, which provides that "[a]n action must be prosecuted in the name of the real party in interest." As the Supreme Court and Second Circuit have explained, "[a]lthough there exists a 'rough symmetry between the real party in interest standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy[,] the two rules serve different purposes and need not produce identical outcomes in all cases.'" Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 194 (2d Cir. 2003) (citing Navarro, 446 U.S. at 462 n. 9).

- Star was the principal shareholder of Cliffstar and stood to receive more than 85% of the proceeds of the sale.

- Star was being paid approximately $1 million over three years under a consulting agreement.

- Star was the founder and chairman of the board.

- Star was actively involved in the management of Cliffstar, and he remained involved even after it was sold.

- Under the purchase agreement, Star is the guarantor of Cliffstar's obligations.

Although these alleged facts establish that Star was an influential officer within the corporation and that he owned a large portion of the stock, they do not establish that Star is the real and substantial party.

First, this Court finds it dispositive that if Cott were to prevail in the matter, any judgment would be entered only against Cliffstar, not Star personally. C.f. Oscar Gruss, 337 F.3d at 194 (party "real and substantial" because "[i]t suffered a pecuniary loss and [was] entitled to a portion of the damages award").

Star appears to argue that because he had broad authority to act, he is the "master of litigation." As an initial matter, this Court finds the phrase "master of the litigation" inapt in this case. Typically – in fact, in all cases this Court could find – the phrase is used to define the plaintiff, not the defendant. When applied to a defendant, it adds little to the definition of "real and substantial party" because plaintiffs, not defendants, drive litigation.

Indeed, Star relies primarily on cases where courts discuss the "real party" in terms of plaintiffs. When considering the real party in the context of defendants, the analysis seems to be much easier: who pays? See Argo Global Special Situations Fund v. Wells

Fargo Bank, N.A., 810 F. Supp. 2d 906, 911 (D. Minn. 2011) (quoting Thorn v. Amalgamated Transit Union, 305 F.3d 826, 833 (8th. Cir.2002) ("In short, a nominal defendant is one 'against whom no real relief is sought'"); Shaw v. Dow Brands Inc., 994 F.2d 364, 369 (7th Cir.1993) ("A defendant is nominal if there is no reasonable basis for predicting that it will be held liable."). Here, if judgment is entered, it will be against Cliffstar, not Star. This remains so even though Star is the guarantor of the contract; his potential liability is indirect and entirely derivative – he only pays, in a separate suit, if Cliffstar cannot.

While Star notes that in BC Media Funding Co. II v. Lazauskas Judge Patterson of the Southern District held that the guarantor of the contract was the real party, the procedural posture of that case completely distinguishes it from this one. No. 08 CV 6228 (RPP), 2009 WL 290526 (S.D.N.Y. Feb. 6, 2009). The purpose of that suit was to "enforce individual Guaranty Agreements." Id. at *1. Of course, if Cott is eventually forced to pursue Star as the guarantor in a separate suit, he will then be the real party in interest. But that is not the case here.

The indirect consequences that Star might sustain by virtue of his 85% stock ownership do not compel a different result. The Second Circuit has held that the corporate citizenship alone matters, and that "the status of [] individual shareholders can therefore be ignored." E.R. Squibb, 160 F.3d at 931. Accordingly, this Court finds that while Star certainly has an interest in the litigation, that interest is once-removed, and therefore, Cliffstar, the sole entity against which a judgment could be entered in this case, is appropriately the real and substantial party. See E.R. Squibb, 160 F.3d at 936 ("[W]e regularly exercise diversity jurisdiction in cases where nondiverse individuals or groups who

are not direct parties to the litigation nevertheless have a crucial interest in its outcome.").

Finally, in any event, so long as Star was acting, with however much power or discretion, in a mere representative capacity he should not be considered the real party. See Airlines Reporting Corp. v. S & N Travel, Inc., 58 F.3d 857, 862 (2d Cir. 1995) (citizenship of agent inconsequential when he "acts merely as an agent representing the interests of others."); N. Trust Co. v. Bunge Corp., 899 F.2d 591, 595 (7th Cir. 1990) ("In the eyes of the law a person who sues or is sued in a representative capacity is distinct from that person in his individual capacity."). There is no indication that he acted otherwise. The purchase agreement, which is at the center of this dispute, makes it clear that while Star may have had broad authority to act, he was authorized to act only in a representative capacity. Star, who is not named in his individual capacity and who was not personally a party to the contract (he did not sign it), was "appointed and authorized as agent and representative . . . to take such action as he determined in his judgment appropriate, on behalf of the Cliffstar Companies." (Purchase Agreement, §10.14(a); Docket No. 23-1.) Star's motion on this ground is therefore denied.

**B.     Citizenship of the unnamed corporate entities**

That, however, does not end the matter; Cott has sued Star as a representative of the Cliffstar Companies. And, in accordance with the discussion above, it is the citizenship of the represented entities that controls. See Airlines Reporting Corp., 58 F.3d at 862. But, as noted, Cott has not sued Star as a representative of *all* the companies – at least as identified in the purchase agreement. Instead, it sued Star as representative of Cliffstar Corporation, ShanStar Biotech Inc., and Star World Trading Co. – only three of the five named companies identified in the purchase agreement. The two other – Star Real

8

Property LLC and Harvest Classic LLC – though represented by Star as parties to the purchase agreement, are intentionally omitted. Pointing to this omission, Star argues that those two companies' citizenship must be considered for the purposes of diversity jurisdiction. As a corollary, because their citizenship is not identified, Cott has failed to meet its burden demonstrating that complete diversity exists.

Star raises essentially two arguments to this end.

First, he argues that the amended complaint itself identifies or at least contemplates all five companies. But it does not. Star is sued "solely as Sellers' Representative of the Sellers of Cliffstar Corporation and its subsidiaries Shanstar Biotech Inc., and Star World Trading Company (collectively 'the Cliffstar Companies' or 'Cliffstar')." (Am. Compl., at 1.) Thus, any reference in the amended complaint to "Cliffstar Companies" or "Cliffstar" contemplates only those three companies.

Star's second argument raises a more difficult question. Effectively, Star contends that because his status as representative arises out of the purchase agreement, and because the purchase agreement contemplates all five companies, Star must necessarily be sued as representative of each company.

For support, Star relies on E.R. Squibb, where the Second Circuit dealt with the unique investment structure of Lloyds of London.

Lloyds of London is one of the "world's leading markets for insurance." Id. at 929. Its "unusual" and "age-old" customs operate as follows: "The anonymous underwriters of Lloyd's insurance, who are commonly referred to as 'Names,' invest in a percentage of the policy risk. . . . When litigation over a Lloyd's policy occurs, only one Name (the lead underwriter disclosed on the policy) is ordinarily sued. Nevertheless, [by contract] all the

9

Names subscribing to that policy are liable for their several shares of any adverse judgment against the Lloyd's underwriters." Id.

In E.R. Squibb, the Circuit was presented with the following question: When the lead underwriter is sued in his representative capacity – that is, as a representative for all the Names on the policy – must each Name's citizenship be considered for the purposes of determining diversity jurisdiction? The Circuit found that it must, holding that by virtue of the lead underwriter's broad representation, all the Names are effectively parties to the suit.

But this case presents a slightly different scenario. To analogize this case to E.R. Squibb, Cott, by suing only *some* of the companies, has severed those "Names" whose citizenship must otherwise have been considered. In other words, the plaintiff in E.R. Squibb made no effort to limit the representative capacity of the lead underwriter. Here, Cott has crafted the amended complaint in a manner to limit Star's representation. And, as Cott points out, for the purposes of diversity jurisdiction, it is free to do this. As the third Circuit recognized:

> Plaintiffs have the option of naming those parties whom they choose to sue, subject only to the rules of joinder of necessary parties. While the plaintiffs' decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election unless the plaintiff had impermissibly manufactured diversity or used an unacceptable device to defeat diversity.

Boyer v. Snap-on Tools Corp., 913 F.2d 108, 110 (3d Cir. 1990).

Star argues that because the purchase agreement consistently refers only to Cliffstar Companies (and since "Cliffstar Companies" is defined in the purchase agreement as all five of the individual companies), Cott's effort to separate them is a non-starter. In

10

other words, Star argues that the purchase agreement renders all five companies indistinguishable from one another. Indeed, the agreement does provide, for example, that "'EBITDA' means the net income plus interest, income taxes, depreciation and amortization of the *Cliffstar Companies*." (Purchase Agreement, at 5.) And throughout the purchase agreement, the five companies are regularly referred to by their collective title. This may raise a joinder problem under Federal Rule of Civil Procedure 19(b), and, in turn, a diversity-jurisdiction problem. As explained in the seminal *Federal Practice and Procedure*, "In analyzing whether complete diversity exists, the court may not disregard the citizenship of absent parties who traditionally would be characterized as 'indispensable' and are now described in Rule 19(b) as persons who are required to be joined under Federal Rule 19(a) but whose joinder may not be feasible, most typically because of a lack of subject matter or personal jurisdiction." 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, § 3606 (3d ed. 2008). But at this point, this Court cannot determine whether, and it has not been specifically argued that, the missing companies are "indispensable." Thus, absent fraudulent joinder, this Court looks only to the parties actually sued to determine if it has diversity jurisdiction. And Cott has no burden with regard to the unnamed parties. See Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487, 495 (S.D.N.Y. 2002) (party asserting that an indispensable party is missing "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence."). Considering only the named companies, this Court has jurisdiction. Accordingly, Star's motion on this ground is denied.

### C. Cliffstar Corporation's citizenship

Last, Star argues that diversity jurisdiction does not exist because Cliffstar Corporation should actually be deemed a citizen of Florida, not New York.[4] Star argues that because he is "receiv[ing] and distribut[ing] payments made under the agreement and winding down" the business in Florida, that state should be considered the corporation's principal place of business. (Def.'s Reply Br. at 8.) But this Court finds Circle Industries USA, Inc. v. Parke Construction Group, Inc., instructive and conclusive. 183 F.3d 105, 108 (2d Cir. 1999). There, then-Circuit Judge Sotomayor found that because the corporation-defendant was inactive, the relevant state for jurisdiction purposes was that state where it last transacted business. And "[a]lthough [the corporation's] sole officer and director presently lives in New York and he receives the corporation's mail there, these contacts do not alter its citizenship because the corporation is not transacting business through these activities." Id. Because there is no dispute that Cliffstar's principal place of business was New York before selling its assets to Cott, Cott has met his burden demonstrating that grounds for diversity exist.

Star analogizes this case to SEG Vanguard Gen. Corp. v. Ji, 195 F. Supp. 2d 564, 568 (S.D.N.Y. 2002), seemingly in an effort to argue that Cliffstar was doing more than mere "winding down" and was in fact an active corporation. But the facts of SEG are plainly distinguishable, and do not alter this Court's conclusion. There:

---

[4]Star appears to argue, in a footnote, that the same should hold for ShanStar Biotech Inc. and Star World Trading Company. Star notes that "for similar reasons" those companies' principal place of business "may be" Florida. (See Def.'s Reply Br., at 8 n. 4; Docket No. 20.) In accordance with the analysis below, this Court finds Cott's allegation that those companies' place of business is New York to be sufficient at this time.

12

> SEG Vanguard [] engaged in number of other activities that suggest that it is an active corporation. It paid salaries and medical and dental insurance premiums for two employees, it maintained an active bank account, it incurred large telephone bills to China where its parent corporation is located and most importantly, from October 2000 through January 2002 it borrowed over $200,000 from Golden Shuttle, another active corporation also run by Ruan from her home address. While certain minimal activities are necessary to wind down a business and prosecute a lawsuit, SEG Vanguard has failed to provide a plausible explanation as to why these activities required borrowing $200,000 from October 2000 through January 2002, a time during which it was allegedly inactive.

Id.

No such activities are present or alleged here. Accordingly, Circle Industries controls and Star's motion on this ground is denied.

## IV. CONCLUSION

Star's motion to dismiss for lack of subject-matter jurisdiction is denied because (1) Star's individual citizenship is irrelevant, (2) absent impermissible joinder, this Court looks only to the named parties to determine jurisdiction, and (3) the named parties are diverse.

## V. ORDERS

IT HEREBY IS ORDERED, that Star's motion to dismiss (Docket No. 21) is DENIED.

SO ORDERED.

Dated: October 15, 2013
        Buffalo, New York

                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                              Chief Judge
                              United States District Court